UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GEORGE HEMPHILL, )
)
Plaintiff, )
)
v. )
)
PORTOLA PACKAGING, INC., )
)
Defendant. )

## COMPLAINT

COMES NOW the Plaintiff, George Hemphill, and files claims against the Defendant for employment discrimination on the basis of age, religion and retaliation, and states the following:

1. The Plaintiff, George Hemphill (hereinafter "Plaintiff"), is a resident and citizen of Erwin, Unicoi County, Tennessee.

2. The Defendant, Portola Packaging, Inc. (hereinafter "Portola") is a corporation authorized and doing business in Kingsport, Sullivan County, Tennessee with business location at 408 Tilthammer Drive, Kingsport, Tennessee 37760. Defendant's Registered Agent for service of process is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

3. Plaintiff's age discrimination claim is premised upon the provisions of the Age Discrimination in Employment Act ("ADEA"), codified at 29 U.S.C. §§ 621 *et seq.* Plaintiff filed an EEOC charge on or about November 29, 2011, alleging discrimination and retaliation based upon age and religion. Plaintiff's religious discrimination claim is premised upon the provisions of Title VII of the Civil

Rights Act of 1964, codified at 42 U.S.C. §2000e *et seq*. More than sixty days have elapsed since Plaintiff's EEOC charge was filed as required by 29 U.S.C. § 626(d). Plaintiff has received a Notice of Right to Sue from the EEOC, dated July 20, 2012. This Court has original jurisdiction over Plaintiff's age and religion discrimination claims pursuant to the federal question provisions of 28 U.S.C. § 1331.

4. Plaintiff's state law employment discrimination claims of age and religious discrimination are premised upon the provisions of the Tennessee Human Rights Act ("THRA"), codified at Tenn. Code Ann. §§ 4-21-401 *et seq*. This Court has supplemental jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this Court pursuant to 29 U.S.C. § 1391 because Defendant operates a business in Sullivan County, Tennessee, and a substantial part of the events giving rise to Plaintiff's claims occurred in Sullivan County, Tennessee.

6. Plaintiff was employed by Portola for approximately four years, from 2008 until April 30, 2012. While employed by Portola, Plaintiff worked in various positions, received positive evaluations at each position, and consistently received pay raises.

7. In or around June 2011, Portola brought in two (2) new management employees. The General Manager was Bill Lennox (hereinafter "Lennox"), and the other management employee was Chuck Mays (hereinafter "Mays"). Initially,

Plaintiff's experience working under the supervision of these new management employees was acceptable and without incident.

8. After some time passed, however, Mays told the Plaintiff that Mays and Lennox, who worked together previously, knew how to get rid of "anyone within the company that they wished." Shortly thereafter, Lennox and Mays began to carry out a pattern of harassment against the Plaintiff, including calling him names which were derogatory regarding his age, making fun of his religion, yelling at him for the purpose of intimidation, and encouraging others on the job to do the came.

9. This pattern of conduct on behalf of Lennox and Mays was done with the knowledge of Portola, and was discriminatory based on Plaintiff's age and religion.

10. On several occasions, Lennox called the Plaintiff derogatory names in front of others, including "Old Fart", "Old F**K" and "Old Bastard." This was done routinely, publicly, and around other employees.

11. After Mays had been at the Portola facility in Kingsport, Tennessee, for a short period of time, he became aware of the Plaintiff's Christian religious beliefs and began publically commenting on same.

12. On the work site, Mays, in front of other employees, subjected the Plaintiff to religious slurs and religious bigoted jokes. On one occasion, Mays told the Plaintiff in front of other employees that he "hoped he and the Plaintiff died at the same time so Mays could laugh at the Plaintiff as he was looking for Jesus." These slurs, insults, and jokes continued for months.

13. At the same time that this type of harassment began, Lennox and Mays began finding small things at work that they could claim the Plaintiff did incorrectly, and began a pattern of giving the Plaintiff more work to do. They began scheduling Plaintiff to work on Sunday mornings, which they knew would cause a problem because of Plaintiff's church attendance. Lennox and Mays also undertook a course of conduct intended to physically intimidate Plaintiff. This behavior by Lennox and Mays caused the Plaintiff to fear for his personal safety, and to lose sleep worrying whether he would be fired, demoted, or physically assaulted. Plaintiff initially tried to "go along" with Mays and Lennox because they were initially successful in their attempts to intimidate Plaintiff and Plaintiff did not want to be fired.

14. Part of the pattern of intimidation and harassment of Lennox and Mays included conduct of an aggressive, sexual nature. On one occasion, Plaintiff came into his office to find Lennox sitting in Plaintiff's chair. Plaintiff jokingly told Lennox that Lennox was in Plaintiff's chair and would have to get up. Lennox directed two other employees to watch the office door and to block access to the door. Lennox then stood up, removed his pants and underpants exposing himself and proceeded to rub his naked buttocks and genitals on Plaintiff's chair. After doing this, Lennox looked at the Plaintiff and said, "What do you think about that?" All of these actions by management and others at Portola made the Plaintiff feel harassed, intimidated, fearful for his job, as well fearful for his personal safety.

15. On September 27, 2011, Plaintiff filed a written complaint with the Portola Human Resources Department. A copy of this written complaint is attached as Exhibit A. In this written complaint, Plaintiff mentioned that he believed that he was being targeted because of his age, and also that he questioned whether he was being targeted because he did not have a college degree.

16. On or about October 11, 2011, Plaintiff received Portola's response to his written complaint. A copy of this Response is attached as Exhibit B. The response assured the Plaintiff that his lack of a college degree had no bearing on his treatment. However, Plaintiff alleges that the reason for his poor treatment is related to his age and religion.

17. On other occasions, Plaintiff has been subjected to harassing and intimidating behavior by Lennox involving nudity and sexual aggression on the part of Lennox. On one occasion, Lennox invited the Plaintiff to a golf outing that was attended by a number of Portola employees. While playing golf, Lennox again unfastened his pants, exposed himself, and urinated on Plaintiff's golf cart. Plaintiff alleges that all the actions, including these sexually aggressive actions, are part of a plan to intimidate and "get rid" of the Plaintiff.

18. Portola's response to the Plaintiff's written complaint of October 11, 2011, also established the following:

    a. Portola admitted that Lennox had made derogatory remarks to Plaintiff about his age;

  b. Portola admitted that Plaintiff had been subjected to religious slurs at the hands of Portola Management, and that these slurs were confirmed by another employee;

  c. Portola refused to grant Plaintiff any relief as a result of his complaint and assured him that "there was no malicious intent and that this conduct would not occur in the future."

19. The October 11, 2011, response from Portola also stated, "This issue has been addressed by me and Bill Lennox with Junior." Portola therefore, chose to assign Lennox, who was causing Plaintiff's problem, part of the responsibility for "addressing" this action with one other employee of Portola. Portola therefore failed to address the problem since Lennox was, at least in part, the cause of the harassing and discriminatory conduct.

20. Shortly after Plaintiff filed his complaint, Lennox approached the Plaintiff and told him that he "hoped he was happy [and] that [Plaintiff] had ruined the careers of three people."

21. After Plaintiff filed his written complaint on or about September 27, 2011, Lennox told the Plaintiff to never speak to him again. Lennox told the Plaintiff if he needed to communicate with him, he should go through his supervisor. This directive made it very difficult for Plaintiff to do his job.

22. On or about November 7, 2011, approximately three (3) weeks after Portola responded to Plaintiff's written complaint of discrimination, Plaintiff was

called in to a supervisor's office. Plaintiff was told that he had the choice of either resigning under certain conditions, or accepting a demotion and decrease in pay. The Company presented the Plaintiff with a proposed separation agreement that fully released the company from any liability. Plaintiff accepted the demotion and decrease in pay, rather than completely separating from his job because he could not afford to be without work. Copies of the documents which were presented to Plaintiff on that date are attached as Exhibit C and Exhibit D.

23. Since the date of the above-referenced meeting, when Plaintiff was forced to choose either resignation or demotion, Plaintiff has feared for his job and personal safety.

24. Portola filled Plaintiff's pre-demotion position with an employee who is substantially younger than Plaintiff and younger than forty (40) years old.

25. Portola, through the words and actions of its managers, clearly indicated to Plaintiff that Portola would like for Plaintiff to leave his employment with Portola because Plaintiff was too old to continue working there. Portola, through the words and actions of its managers, also made it clear to Plaintiff that Portola would continue the pattern of conduct intended to make Plaintiff's life miserable until Plaintiff quit his employment.

26. Working conditions for Plaintiff due to the harassment and retaliation carried out by Portola's managers ultimately made the workplace intolerable for Plaintiff. Plaintiff was off work for a period of time for shoulder surgery. During this time, Portola changed some of its procedures. When Plaintiff came back to work he was required to comply with the new procedures without being given any

training. When Plaintiff inevitably was unable to comply with the new procedures he was chastised by his Portola managers. Also, other co-workers would not assist and cooperate with Plaintiff. On one occasion, Plaintiff was told by a co-worker that management had told other co-workers not to help Plaintiff with jobs he had not been trained on. Plaintiff's work loads were increased and the amount of time he was given to complete jobs was decreased. The harassment and hostility experienced by Plaintiff at work became so severe and pervasive that a reasonable person in Plaintiff's shoes would have felt compelled to resign his employment. Plaintiff did quit his job at Portola on April 30, 2012, to escape the hostile work environment. Plaintiff avers that this separation of employment was effectively a constructive discharge.

27. Plaintiff has received a right to sue letter from the EEOC, dated July 20, 2012. and intends to amend his Complaint upon receipt of said letter to include claims for Defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

## COUNT I
## AGE DISCRIMINATION

28. Plaintiff incorporates paragraphs 1 through 27 above as if fully set forth herein.

29. Plaintiff asserts that Defendant discriminated against Plaintiff as set out above by harassing him, treating him differently than other employees, demoting him, and decreasing his rate of pay based upon Plaintiff's age in violation of the

Age Discrimination Employment Act ("ADEA"), 29 U.S.C. Section 621, *et. seq.*, and Tenn. Code Ann. 4-21-101, *et. seq.*

30. Plaintiff is sixty-one years of age, and he alleges that Defendant treated him differently than younger employees and that Defendant's actions were deliberate, willful and intentional discrimination based upon Plaintiff's age.

31. Defendant's continued discrimination against Plaintiff culminated in Defendant's demotion and loss of pay based upon Plaintiff's age as set out above.

32. With regard to Plaintiff's demotion, Plaintiff avers that:

    a. Plaintiff was over age forty;

    b. Plaintiff was qualified to do his pre-demotion job;

    c. Plaintiff was subject to an adverse employment action by his being forced to choose between demotion and resignation; and

    d. Following the demotion, Plaintiff's pre-demotion job was filled by a substantially younger person, who was under the age of forty (40).

33. Said demotion and decrease in pay constitutes an adverse employment action.

33. Plaintiff's separation of employment as a result of the severe and pervasive harassment and intolerable work environment constituted a constructive discharge, which is an adverse employment action.

## COUNT II
## RELIGIOUS DISCRIMINATION

34. Plaintiff incorporates paragraphs 1 through 27 above as if fully set forth herein.

35. Plaintiff asserts that Defendant engaged in unlawful religious discrimination in violation of the THRA pursuant to Tenn. Code Ann. §§ 4-21-101, *et. seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

36. Plaintiff asserts that Defendant discriminated against the Plaintiff as set out above by harassing him, treating him differently than other employees, demoting him, and decreasing his rate of pay based upon Plaintiff's religion. This is a violation of Tenn. Code Ann. Section §§ 4-21-101, *et. seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII")

37. Defendant's continued discrimination against Plaintiff culminated in Plaintiff's demotion and loss of pay based upon Plaintiff's religion as set out above.

38. Said demotion and decrease in pay constitutes an adverse employment action.

## COUNT III
## RETALIATION

39. Plaintiff incorporates paragraphs 1 through 27 above as if fully set forth herein.

40. Plaintiff asserts that Defendant engaged in unlawful retaliation in violation of the ADEA, Title VII and the THRA pursuant to Tenn. Code Ann. Section 4-21-101, *et. seq.*

41. Plaintiff engaged in activity protected by the ADEA, Title VII and the THRA when he complained to Portola about the unlawful harassment and discrimination that he suffered as a result of the actions of Lennox and Mays as set out above. Plaintiff further engaged in protected activity when he filed his charge of discrimination with the EEOC on or about November 29, 2011.

42. At all relevant time set forth herein:

   a. Plaintiff engaged in activity protected by the ADEA, Title VII and THRA by complaining about unlawful harassment;

   b. Defendant knew that Plaintiff had exercised protected rights by complaining about the unlawful harassment;

   c. Defendant thereafter took materially adverse actions against Plaintiff by verbally assaulting and harassing Plaintiff, by forcing Plaintiff to accept a demotion, by reducing Plaintiff's pay, and by making Plaintiff's work environment so intolerable as to constructively discharge Plaintiff; and

   d. there was a causal connection between the materially adverse actions taken by Defendant and Plaintiff's protected activity.

43. Portola knew that Plaintiff had exercised his rights by virtue of its receipt of the letter of complaint and by its response, both of which are attached hereto.

44. Following its receipt of the letter complaining of unlawful discrimination, Defendant took an adverse employment action by demoting the Plaintiff and reducing his rate of pay.

45. Plaintiff alleges that Defendant is guilty of common law retaliation in that the Plaintiff was an at-will employee of Defendant, and Plaintiff was demoted and his pay was cut and the reason for same was his attempt to exercise a statutory or constitutional right. A substantial factor in Defendant's decision to demote and reduce Plaintiff's pay was his exercise of his protected rights. Defendant's actions in response to Plaintiff's exercise of protected rights violates a clear public policy.

## APPLICABLE TO ALL COUNTS

46. Plaintiff suffered direct pecuniary losses as a result of the Defendant's violations of the ADEA, Title VII and THRA, including age discrimination, religious discrimination and retaliation.

47. Plaintiff will continue to suffer direct pecuniary losses as a result of the Defendant's culpable acts or omissions as set forth above, including Defendant's violations of the ADEA, Title VII, THRA, and Tennessee Common Law.

48. Plaintiff seeks a judgment for all damages to which he is entitled, including back pay plus interest thereon, front pay with liquidated damages, compensatory damages, punitive damages, expert witness fees, attorney's fees, and other litigation expenses and court costs.

49. Plaintiff was demoted and his pay was decreased by Defendant, therefore Plaintiff is entitled to past, present, and future wages and benefits, incidental

damages, attorney's fees, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other nonpecuniary losses.

50. Plaintiff further submits that the Defendant has acted: (a) willfully, (b) intentionally, (c) maliciously, or (d) recklessly in taking the job actions against Plaintiff as set out above, Plaintiff is entitled to liquidated damages.

WHEREFORE, PLAINTIFF PAYS:

A. That service of process issue to Defendant as set forth herein;

B. That Plaintiff be awarded all damages to which he is entitled as set out above;

C. That Plaintiff be awarded compensatory damages in the amount of $300,000.00 or an amount to be determined by the jury;

D. That Plaintiff be awarded back pay, front pay, present and future wages and benefits, incidental damages;

E. That Plaintiff be awarded liquidated damages and punitive damages in an amount to be determined by the jury;

F. That the Court award Plaintiff interest, attorney's fees and costs incurred in prosecuting this action and such discretionary costs as provided under the ADEA, Title VII and Tennessee law.

G. That the Court award the Plaintiff such other, further, general and different relief to which he may be entitled; and

H. That a jury be empanelled to try this action.

Respectfully submitted,


s/ E. Patrick Hull
**E. PATRICK HULL**
BOPR No. 004437
229 E. New Street
P.O. Box 1388
Kingsport, TN 37662
Ph: (423) 247-6151
Fax: (423) 247-6152
Email: pat@hull-firm.com


s/ Jason M. Ensley
**JASON M. ENSLEY**
BPR No. 020066
Ensley, Baker & Shade, PLLC
203 Broyles Drive, Ste 201
Johnson City, TN 37601
Phone 423-631-0550
Fax 423-631-0555
Email: jensley@ensleybakershade.com

*Attorneys for Plaintiff*